UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-398-KSF

EAST KENTUCKY POWER COOPERATIVE                                PLAINTIFF

v.                                    **OPINION & ORDER**

COMVERGE, INC.                                                     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of the defendant, Comverge, Inc. ("Comverge"), to dismiss, transfer, or stay this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or 28 U.S.C .§ 1404(a). This motion is fully briefed and is ripe for review.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the purchase of certain programmable thermostats sold to the plaintiff, East Kentucky Power Cooperative ("EKPC"), by Comverge. EKPC now contends that the thermostats are defective. The relevant facts related to the first transaction, in 2008, are largely undisputed. On June 9, 2008, EKPC sent a Purchase Order (the "2008 PO") to Comverge, offering to purchase 2,500 thermostats [DE #12-2]. The 2008 PO contained the basic terms of each sale, including item description, quantity, unit price, and total price. It also incorporated EKPC's standard Terms and Conditions, which purported to limit acceptance to those terms only. It states as follows:

> TERMS AND CONDITIONS - These terms and conditions as set forth on this order are the only terms and conditions that govern this transaction. Any modification of said terms will be binding on EKPC only if made in writing by EKPC's authorized representative.

Furthermore, the 2008 PO stated that any "action to enforce this purchase order" shall be brought in Clark County, Kentucky.

In response to the 2008 PO, Comverge sent its Sales Order Acceptance ("SOA") to EKPC [DE #10-1]. The SOA accepted EKPC's offer to purchase thermostats, but expressly conditioned such acceptance on EKPC's agreement to Comverge's Terms and Conditions referenced in, and attached to, all SOAs. Included within Comverge's Terms and Conditions is a merger clause that states that Comverge's Terms and Conditions constitute the entire agreement between the parties and supersede all previous communication and agreements between them. It provides:

> Purchaser's order is binding only when accepted in writing at the offices of Comverge, Inc. through Comverge's Sales Order Acceptance. These terms and conditions are the only terms and conditions that apply to Purchaser's order. Our acceptance of Purchaser's order is conditioned upon Purchaser's agreement with these terms and conditions. With the exception of price, product type, and quantity, we reject any terms and conditions in Purchaser's order which are different from or additional to these terms and conditions or any changes to the order after acceptance, unless approved in writing and signed by our authorized representative.

Additionally, Comverge's Terms and Conditions include an exclusive forum selection clause, stating:

> For sales to a Purchaser incorporated in the United States, the parties acknowledge and agree that the appropriate courts sitting in the Northern District of Georgia, U.S.A., shall have sole and exclusive authority to hear and adjudicate any dispute arising out of or related to this Agreement and each party hereby irrevocably consents to the jurisdiction of such courts.

[DE # 10-1]. Subsequent to the parties' exchange of these forms, Comverge shipped the 2,500 thermostats.

In 2009, the parties began negotiating a second purchase of thermostats by EKPC. By Purchase Order of May 7, 2009 (the "2009 PO"), EKPC offered to purchase an additional 5,000

thermostats from Comverge [DE #12-3]. The 2009 PO states that "Comverge's Terms and Conditions for this purchase are attached and incorporated, and amended as noted by Sr. Sourcing Agent, B. Eames." The handwritten amendments written by Ms. Eames include: "the parties acknowledge and agree that the appropriate courts sitting in the Commonwealth of Kentucky, U.S.A., shall have sole and exclusive authority to hear and adjudicate any dispute arising out of or related to this Agreement and each party irrevocably consents to the jurisdiction of such courts."

In response, Comverge sent its standard Sales Order Acceptance form; however, EKPC contends that Comverge did not include the pages containing its standard terms and conditions. Comverge subsequently shipped the thermostats as ordered by EKPC.

The thermostats purchased from Comverge were subsequently installed in thousands of residential and other buildings in Kentucky, pursuant to an energy saver program developed by EKPC. However, EKPC later learned that the thermostats could fail in an unsafe manner, *i.e.*, experience a thermal heating incident that could result in fire. As a result, EKPC has removed the Comverge thermostats from the homes and other buildings in Kentucky. On November 22, 2010, EKPC filed this civil action, alleging breach of warranties associated with the thermostats Comverge sold to EKPC in 2008 and 2009 [DE #1]. EKPC seeks to recover the damages it incurred as a result of the allegedly defective thermostats, including but not limited to, damages resulting from the time, energy, and resources spent informing customers of the need to remove the thermostats, the cost of removal of the thermostats, the replacement of the thermostats with safe alternatives, the cost of the used and unused (and unusable) thermostats sold by Comverge, as well as the loss of the savings and investment in energy resources that would have resulted if the thermostats had not been defective.

## II. COMVERGE'S MOTION TO DISMISS, STAY, OR TRANSFER

Comverge has filed its motion to dismiss, stay, or transfer this action [DE #9]. In support of its motion to dismiss or transfer, Comverge argues that EKPC and Comverge were parties to a series of written agreements that contain, among other terms, a forum selection clause designating the Northern District of Georgia as the exclusive venue for any dispute arising out of or related to EKPC's purchase of thermostats from Comverge. As a result, Comverge contends that this Court should dismiss EKPC's action pursuant to Rule 12(b)(6), or transfer it to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

Alternatively, Comverge moves the Court to stay this action pending a decision on Comverge's motion to dismiss or transfer which has been filed in a similar action currently pending in the United States District Court for the Western District of Kentucky. In that action, Louisville Gas and Electric Company and Kentucky Utilities Company have filed a suit against Comverge alleging a claim for breach of warranties based on identical alleged defects in the same model thermostat sold by Comverge. While the action in the Western District was indeed filed first, Comverge's motion to dismiss in that action is not yet ripe due to an extension of time granted by that district court for Comverge to file its reply, which is not due until March 31, 2011.

EKPC opposes Comverge's motion. Essentially, EKPC argues that this case represents a classic "battle of the forms," and under UCC §2-207(3), any conflicting terms within the forms exchanged by the parties cancel each other out and neither controls. Since the parties did not agree on a forum, EKPC argues that it is entitled to bring the action here, where it resides and does its business, and where the damage occurred. Additionally, EKPC contends that the factors bearing on a motion to transfer favor keeping the action in this court. Finally, EKPC opposes Comverge's

alternative motion to stay, arguing that this Court is not bound by any decision on a motion filed by Comverge in a separate action, in a different court, based on different contracts, and between different parties.

## III. ANALYSIS

### A. COMVERGE'S MOTION TO STAY

Before turning to the merits of Comverge's motion to dismiss or transfer, the Court will address Comverge's motion to stay. Comverge contends that this Court should stay this action pending a ruling from the district court in the similar action involving Comverge in the Western District of Kentucky. Even if the Court were so inclined, Comverge's motion to dismiss in that action is not yet ripe and EKPC is entitled to a determination of its rights and liabilities in this action without any delay that may occur in an action in another district court in another district. Accordingly, Comverge's motion to stay will be denied.

### B. COMVERGE'S MOTION TO DISMISS

#### 1. THE 2008 SALE OF THERMOSTATS

Because the facts and documents surrounding the 2008 sale of thermostats differ from the facts and documents surrounding the 2009 sale, both transactions are analyzed separately. Turning first to the 2008 sale, the question for this Court is whether this case is governed by KRS 355.2-207(3), or whether the Court should construe Comverge's SOA as a rejection of EKPC's offer and a counteroffer, which EKPC accepted by failing to notify Comverge of any objection to the terms and by accepting the goods.

The parties' contract for the sale of thermostats is governed by Article II of the Uniform Commercial Code ("UCC"), adopted by Kentucky effective as of July 1, 1960, and contained in KRS

Chapter 355. Under the UCC, parties may form an enforceable contract even if they fail to agree on one or more terms. KRS 355.2-204. Moreover, the UCC does not require a party to sign a purchase order to constitute an acceptance of a contract. *See Home Lumber Co. v. Appalachian Reg'l Hosps., Inc.*, 722 S.W. 912, 913 (Ky.Ct.App. 1987). Under KRS 355.2-204, "a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

The identification and application of contract terms following an exchange of written forms is governed by KRS 355.2-207, which states:

> (1) A definite and seasonal expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) The offer expressly limits acceptance to the terms of the offer;
>> (b) They materially alter it; or
>> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

KRS 355.2-207.

The Court must first determine whether Comverge's 2008 SOA constitutes an acceptance under 2-207(1). Here, EKPC's 2008 PO expressly limited acceptance to the terms and conditions in the PO, requiring any modification of terms to be "made in writing by EKPC's authorized

6

representative." Since Comverge's 2008 SOA contained a materially different term (the forum selection clause), the 2008 SOA cannot be considered an acceptance of EKPC's 2008 PO. Without an acceptance, there is no contract under 2-207(1) or 2-207(2). *See Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168, n.4 (6th Cir. 1972)(rejecting the notion that "silence or inaction can be recognized as an offer's assent" to an "expressly conditional" acceptance).

Comverge, however, argues that its 2008 SOA should be considered a counteroffer, and subsequent performance and receipt of the thermostats by EKPC constitutes acceptance. This is the approach taken by the Kentucky Court of Appeals in *Middletown Engineering Co. v. Climate Conditioning Co., Inc.*, 810 S.W.2d 57 (Ky.App. 1991). In *Middletown*, the plaintiff-buyer sent purchase orders to the defendant-seller, who responded with an acceptance that stated:

> This writing constitutes the complete and exclusive statement of the terms and conditions of sale of the products and/or services described herein, and Seller's obligation to sell is expressly conditioned upon assent to these terms and conditions. Buyer will be deemed to have assented to these terms and conditions unless Seller receives written notice of any objection within 5 days of the date Buyer receives this writing.

*Id*. at 58. The plaintiff-buyer argued that these provisions were unenforceable because they materially altered its offer to purchase and therefore were not terms of the contract under 2-207(2). The appellate court disagreed, stating:

> Whether or not these [terms] are considered as materially altering the offer, [defendant-seller] expressly conditioned its acceptance of the purchase offer on the purchaser's assent to the additional terms and conditions. [Plaintiff-buyer] did not notify [defendant-seller] of any objection to the terms and conditions until long after the goods were delivered and installed. Under these circumstances the additional terms became part of the contract between the parties.

*Id*. at 59. Under this scenario, the party that fortuitously sent the last form gets all its terms.

*Middletown*, however, is distinguishable on its facts. There is no indication that the offer in *Middletown* contained any language that the contract formed as a result of its offer must consist only of the terms contained in the offer and no others, whereas EKPC's PO clearly stated that any contract formed as a result of EKPC's offer must include all the terms in those offers and no others. Additionally, the defendant-seller in *Middletown* did more than just make its acceptance "conditional" on its terms; it also spelled out the means by which the offeror would be deemed to have accepted those terms. Because the plaintiff-buyer did not object, the court found that "[u]nder these circumstances the additional terms became part of the contract between the parties." *Id*. at 59. The *Middletown* court did not address UCC §2-207, or undertake any analysis of the UCC's battle of the forms provisions.

A careful reading of 2-207(3) mandates a different result in this action. Section 2-207(3) is applicable only when the writings of the parties do not otherwise establish a contract yet their conduct evidences a contract. It presumes that there have been "writings of the parties," as in this case, in which they failed to reach an agreement, but that there has been performance. EKPC and Comverge clearly had a contract with agreed upon quantity, price, delivery, and other terms. However, because of the conflicting forum selection clauses, 2-207(3) mandates that neither party's unilateral forum selection clause should control. Without any governing forum selection clause, EKPC is entitled to bring this action in this district, where it resides and does its business and where the damage allegedly occurred. Thus, Comverge's motion to dismiss, with respect to the 2008 sale of thermostats, will be denied.

## 2. THE 2009 THERMOSTATS

The 2009 purchase of thermostats by EKPC from Comverge arose from the PO of May 7, 2009 and previous negotiations. The PO clearly states that "the parties acknowledge and agree that the appropriate courts sitting in the Commonwealth of Kentucky, U.S.A., shall have sole and exclusive authority to hear and adjudicate any dispute arising out of or related to this Agreement and each party irrevocably consents to the jurisdiction of such courts" [DE 12-3]. The PO further states that "[t]hese terms and conditions are the only terms and conditions that apply to Purchaser's order" [DE 12-3]. According to EKPC, Comverge accepted the PO with its standard SOA, but did not include any additional pages of terms and conditions. Comverge, however, disagrees and claims that it indeed included its Terms and Conditions with its SOA.

Whether the Court accepts EKPC's claim that Comverge never sent its Terms and Conditions or Comverge's claim that it did, the result is the same. If Comverge did not include any additional terms or conditions with its SOA, then its SOA was a "definite and seasonal expression of acceptance" of the terms of EKPC's PO under § 2-207(1), and the forum selection clause in EKPC's PO is controlling. On the other hand, if Comverge did include its Terms and Conditions which contain a materially different term (the forum selection clause), then the analysis set out above applies, neither forum selection clause controls, and EKPC is entitled to bring this action in this forum. Accordingly, Comverge's motion to dismiss with respect to the 2009 sale of thermostats will be denied.

### C. COMVERGE'S MOTION TO TRANSFER

Finally, the Court reaches Comverge's motion to transfer. When considering whether to transfer an action to another district under 28 U.S.C. § 1404, the following factors are relevant: (1)

convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, (5) the interests of justice, (6) the relative congestion in the courts of the two forums, (7) the public's interest in having local controversies adjudicated locally, (8) the relative familiarity of the two courts with the applicable law, (9) the plaintiff's original choice of forum, and (10) whether the parties have agreed to a forum selection clause. *Kentucky Speedway LLC v. Nat'l Ass'n of Stock Car Racing, Inc.*, 406 F.Supp.2d 751, 755 (E.D.Ky. 2005 )(citing *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 535 (6th Cir. 2002). Comverge contends that based on its forum selection clause and the location of Comverge and its witnesses, this action should be transferred to the Northern District of Georgia.

However, based on the finding that neither party's forum selection clause controls, and considering all the other factors, the Court cannot justify a transfer to Comverge's chosen forum. EKPC's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors. *See Rutherford v. Goodyear Tire and Rubber Co.*, 943 F.Supp. 789, 791 (W.D.Ky 1996). Additionally, there is a great public interest in having this controversy adjudicated here. Comverge sold its thermostats to EKPC, knowing they would be installed in thousands of Kentucky homes and businesses. Now that they have been removed, and this action is proceeding, the public interest clearly favors having the parties' dispute decided in Kentucky. The other factors are largely neutral to both parties. Accordingly, Comverge's motion to transfer will be denied.

## V. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that Comverge's motion to dismiss, stay or transfer [DE #9] is **DENIED.**

This March 30, 2011.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**